## UNITED STATES COURT OF APPEALS
### FOR THE SEVENTH CIRCUIT

**Marco Arroy**
      **Plaintiff — Appellant,**
**v.**
**Tiffanie Clark,** *et al.*,
      **Defendants — Appellees.**

**Appeal from The United States District Court**
**for the Northern District of Illinois, Eastern Division**
**Case No. 1:23-cv-01129-JEH**
**The Honorable Jonathan E. Hawley**
**District Court Judge Presiding**

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Edward M. Fox
Attorney for Plaintiff — Appellant
Attorney for Marco Arroy
Ed Fox & Associates, Ltd.
118 N Clinton Street, Suite 425
Chicago, IL, 60661
Phone: (312) 345 – 8877
efox@efoxlaw.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**..................................................................................................**3**

**I.     INTRODUCTION**.......................................................................................................**4**

    **A.     THERE ARE TRIABLE ISSUES OF FACT REGARDING REDD'S ACCESS TO PLAINTIFF AS WELL IMMEDIACY OF THE DANGER TO PLAINTIFF** ....................**4**

    **B.     THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY** .........**11**

**II.    CONCLUSION** ..........................................................................................................**12**

## TABLE OF AUTHORITIES

**Cases**

*Case v. Ahitow,* **301 F.3d 605 (7th Cir. 2002)** .................................................................11

*Covalt v. Carey Canada, Inc.,* **950 F.2d 481 (7th Cir. 1991)** ....................................... 5

*Farmer v. Brennan* **511 U.S. 825 (1994)**..................................................................11

*Gidarisingh v. Pollard***, 571 Fed. Appx. 467 (7th Cir. 2014)** ..................................... 10

*Omdahl v. Lindholm***, 170 F.3d 730 (7th Cir. 1999)**...................................................11

*Santiago v. Lane***, 894 F.2d 218 (7th Cir. 1990)** ........................................................... 5

# I. INTRODUCTION

In their response brief, the Defendants do not argue that they did not have knowledge of an impending danger to Arroy, or that there was no objective serious risk of harm. Rather, the Defendants contend that they could not have been deliberately indifferent to the risk to Plaintiff, Arroy because they assessed the risk as not being "immediate," as they wrongly contended that Redd, the attacker, did not have access to Arroy. As a result, Defendants contend they did all they were required to do by writing and passing on a report of the threat that Arroy reported to them. Appellees' brief at 18-19. Plaintiff disagrees that no jury could reasonably find that a mere report of the threat that Arroy reported is deliberate indifference under the facts here. This is particularly true where the Defendants, Bottrell and Jump, had a report of a credible threat that recited a motive, and where the Defendants had the admitted ability to do much more to keep Plaintiff separated and thus safe from his attacker.

In this brief, Plaintiff/appellant shows that the material issues of fact are disputed such that they should be decided by a jury. These issues include a dispute over whether the guards knew that Redd, Plaintiff's attacker, had access to Plaintiff, whether the alleged contention that Plaintiff was not in "immediate" danger was subject to competing interpretations and inferences, and whether the Defendants failed to do an actual and meaningful "assessment" of the danger as they were required to do as it is a part of their job. Plaintiff also sets forth below that triable issues of fact, as well as prior case law, prevents the defendants from obtaining qualified immunity.

## A. THERE ARE TRIABLE ISSUES OF FACT REGARDING REDD'S ACCESS TO PLAINTIFF AS WELL IMMEDIACY OF THE DANGER TO PLAINTIFF

A summary judgment motion should not be granted where there are competing inferences to be had, competing material facts, and credibility issues to be determined. *Covalt v. Carey*

*Canada, Inc.,* 950 F.2d 481, 485 (7th Cir. 1991) (competing or alternating inferences or interpretations of the facts prevent summary judgment from being granted). In the frequently cited case of *Santiago v. Lane*, 894 F.2d 218, 222–23 (7th Cir. 1990), this Court reversed the grant of summary judgment in a deliberate indifference/failure to protect case, like the one here, where the Defendants failed to notify a prison to whom the Plaintiff/inmate was being transferred, that he was being transferred *because* of threats to his safety. The Court reversed the grant of summary judgment in favor of two defendants because they did not make a "specific warning that [the inmate] was the target of inmate attack" to the personnel at the prison to which the inmate was being transferred. This was notwithstanding that, per prison policy, a file had been sent to the transferee prison that documented the previous attack. Nevertheless, the Court stated that: "[s]ince we must view the evidence in the light most favorable to the plaintiff, the plaintiff's showing that the defendants failed to take any action to notify Menard officials of his predicament is enough to create a material issue of fact." The Court went on to state that whether the prison's "policy was adequate and whether their defenses have merit are questions for the finder of fact." *Santiago v. Lane*, 894 F.2d 218, 222–23 (7th Cir. 1990). Thus, the issue for a jury in *Santiago* was whether what was done, for example, the transfer of the inmate's file, was enough to satisfy the Defendants' obligations under the constitution, or whether it constituted "deliberate indifference," because a specific warning was required. This is similar here as the Defendants contend that solely writing a report was sufficient because they allege, the danger was not "immediate." But, what does "immediate" mean, when, although Redd and Arroy did not share a cell and the danger thus did not exist immediately after the threat was made (because they were leaving the chow hall and going to their cells when the threat was made), they could and would encounter one another at least three times a day in the chow hall beginning

**5**

the following morning for breakfast? Thus, whether solely writing a report, because the danger was not immediate or imminent, is deliberate indifference or not is properly a question for a jury. The need for a jury is highlighted because the rationale of no "immediate" danger is a vague concept subject to differing interpretations, at least some of which would demand differing conclusions of liability (particularly since Plaintiff was attacked just 48 hours after the threat was reported). There are additional fact/jury issues as discussed below.

The Defendants' argument that they assessed that the danger was not immediate because Plaintiff and his attacker did not have "access" to one another (Appellees' brief at 19) is a disputed factual issue that should operate to deny summary judgment. First, Plaintiff was beaten by Redd just outside the chow hall just two days after the threat was made. So, the fact is that Redd had access to Arroy, because he did beat him, and thus, there is a dispute in the facts regarding "access" that is self-evident. Second, the Plaintiff also testified that Redd did have access to him. Thus, there is a classic factual dispute that should prevent a summary judgment motion from being granted. Plaintiff testified as follows:

> Q. (by Mr. Taborga) At the time you reported
> to Jump that the threat was made, Redd was in a
> different wing, right?
> A. Next door, yes.
> Q. And that's C wing, right?
> A. Yes.
> Q. And how many times do B wing and C wing
> interact with each other?
> A. Three times a day.
> Q. And where is that located?
> A. Chow hall.
> Q. Other than chow hall, is there any time
> where B wing and C wing would interact with each
> other?
> A. Could be several times a day, sir, if you're called out of your cell for certain
> reasons.

Dkt.71-2, 139:25-140:15.

Further, the fact that the Defendants were aware that Redd had access to Arroy was made implicit be several corroborating facts. First, Defendant Jump reported in his report that the threat was verbally made (and noted to have been made) in the "dietary" (the chow hall). Dkt. 71-8. In their brief, the Defendants even describe the location of the threat when made as "[w]hen Redd threatened Arroy, they were on opposite sides of the chow hall [at that time]." Appellees brief at 8. So, at the very least, the Defendants knew that Arroy was within earshot of a threat being made to him (and thus likely could access him) despite them being housed in different wings. Further, Warden Clark testified that they had contact or access to one another because in discussing the attack, Warden Clark noted that Redd left the dining room before he was "authorized to leave it" (before he attacked the plaintiff):

> Q. Okay. If Lieutenant Jump, in his assessment of what Arroy told him, if he was to deem that a credible threat, would he have the ability to separate them and keep them separated?
>
> A. They were already -- they were already separated because they weren't on the same wing. So they don't go to recreation together. They -- so they were already separated. But, yes, he would have the option to further separate them and find alternative housing.
> Q. So even though they were separated, as you say, they still have contact with each other in the dining hall, right?
>
> A. They did not sit together in the dining hall. But, I mean, they -- yes, they did have contact. I believe one left before he was authorized to leave.

Dkt. 71-5, at 35:24- 36:16. The fact that Redd left the dining hall before he was "authorized" to leave (*Id.,* at 36:17-22) is not a reason to find that, therefore, the Defendants were not deliberately indifferent because they believed there was no "immediate" threat. It is commonsense that since fighting among inmates in a prison does occur, but is also not "authorized," an inmate might take an additional unauthorized act (for example, get up to leave the dining hall before being "authorized," as occurred here) to enable an attack. Thus, for the

reasons just stated, contrary to Defendants' contentions, Redd's "access" to Plaintiff is a triable issue of fact.

Finally, Defendant Bottrell even testified in a contradictory fashion that *after* the attack they made sure that Redd would not have access to Plaintiff. He testified that it would be policy to place the "winner" of the "fight" into segregation where he would absolutely not have access to Plaintiff. Dkt. 64-4, 45:20-46:20. Segregation is a different unit and the inmate in it receives his meals in the unit in his cell and not in the chow hall. *Id.,* at15:18-16:19. Since Defendants felt compelled to place Redd in segregation *after* the attack to ensure he was kept separate from Plaintiff, it is implicit that they felt that without segregation he would have access to Plaintiff as did occur in this case.

Related to the above, the Defendants also assert that they did some "preliminary investigation" and determined that the threat was not immediate because Redd and Arroy did not reside in the same cell or wing. Appellees' brief at 18-20. This, however, does not vitiate any deliberate indifference given what the Defendants knew and what they did. Warden Clark testified that when an inmate reports a threat as Arroy did here, both Lts. Jump and Botrell are to make an "immediate assessment" of the threat and then make a report. Dkt. 71-5, 13:19-14:1; 15:9-16:10. In fact, there was no "assessment" done as Defendants contend. The incident report that Defendant Jump completed made no sort of assessment; rather, Jump just simply made an incident report of the threat that Arroy reported. Dkt. 71-8. Further, Jump testified that all he does when he receives information of a threat like the one reported by Arroy is to make a report of the threat – he does not do an investigation or "assessment." His testimony was as follows:

Q. Okay. Any you said – and the only reason you didn't think it was – you didn't feel it was an immediate danger because you felt they didn't have access to one another, physical access?

A. That, and individuals in custody make threats – make statements all the time, whether – sometimes people want to move. So they might make up a story or something just in case – in order to go – whether they want to move themselves or move someone else out of the area.
So, again, it's my job so report it and IA [internal affairs] to figure out if there's any substance to the story."

Q. Do you recall making any sort of judgment about whether or not Marco Arroy was just making this report because he wanted to move?

A. No. Again, I just report it and then send it out. Go from there.

Dkt. 66-3, 28:22-29:10. He literally stated that he does not feel it is his job to make an assessment because he "just report[s] it and then send it out," and this is contrary to what Warden Clark and his job expected from him.

Similarly, Defendant Bottrell could not tell from Jump's report whether or not there was an immediate threat. Dkt. 64-4, 231-12. So, all he did was forward the report on to internal affairs. *Id.,* at 27:22-28:11. He does not recall doing anything else with the report. *Id.* at 47:6-10. In short, other than allegedly determining that Redd and Arroy were not in the same cell or wing, nothing was done, including no meaningful assessment, and/or including any meaningful preliminary investigation as defendants contend.

Also, as noted above, what is meant by defendants stating that they determined there was no "immediate" threat is anybody's guess. The threat was documented on Jump's report as occurring at 5:46 pm on May 2. Dkt. 71-8. According to the incident report of the attack, it occurred 2 days later on May 4 at 5:40 pm. Dkt. 64-11. During that 48 hours, absolutely nothing meaningful was done to protect Arroy. Further, while the threat made after dinner on May 2 was not imminent since they did not share a cell, there was still a danger that the next

time they were in the same vicinity in the dining hall during any of their three meals a day that the threat would be carried out. A jury could reasonably find that given the totality of the circumstances, Defendants were deliberately indifferent to Plaintiff's safety and that they should have done something meaningful, which was within their power, before the next meal. As discussed in Plaintiff's opening brief and as supported by case law, merely writing a report about it, when Defendants Jump and Bottrell had the ability to do much more than write and/or pass along a report, is not "reasonable." Appellant's brief at 12-15.

In the case of *Gidarisingh v. Pollard,* the Court found that summary judgment was not appropriate in a similar circumstance where a guard received a report just 23 hours before the attack but had done nothing during that time where the "record [did not contain] evidence that other, more urgent demands pressed on [Defendant] Lesatz's time after he received the note, or that [Plaintiff] Gidarisingh had a history of crying wolf to get immediate attention." *Gidarisingh v. Pollard*, 571 Fed. Appx. 467, 470–71 (7th Cir. 2014) Certainly, since 23 hours was enough for the Court in *Gidarisingh* to deny summary judgment, absent facts that would indicate that 23 hours was not enough, the 48 hours that lapsed in this case between the notice and the attack was more than enough to have meaningfully separate Arroy from Redd. Given the above disputes of fact regarding "access," differing interpretations of what "immediate" means in the context of a threat, and the Defendants' failure to do an actual "assessment" of the threat as their job required, a reasonable jury could certainly find the Defendants Bottrell and/or Jump to be deliberately indifferent to Plaintiff's safety.

## B. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

In the first instance, it has long been the law that qualified immunity is not available to a defendant if there are issues of fact that relate to the claim of qualified immunity. *See e.g., Omdahl v. Lindholm*, 170 F.3d 730, 734 (7th Cir. 1999). Since there are issues of fact as has been discussed above, qualified immunity is not available to these defendants at this time.

Also, as stated in Plaintiff's opening brief, the law is clear and has been clear for decades that prison officials are deliberately indifferent to an inmate's safety who are on notice of a credible threat to an inmate, where they do not act to do anything to address the threat. *See, e.g, Farmer v. Brennan* 511 U.S. 825 (1994). The Defendants attempt to argue that qualified immunity is available because there was no sufficiently similar prior case. But, they argue for a view that is impossibly narrow, and also they misrepresent the relevant facts. For example, they try to distinguish the prior case of *Case v. Ahitow,* 301 F.3d 605, 606 (7th Cir. 2002) to argue that *Case* is not sufficiently similar. Appellees' brief at 29. But, the alleged distinctions are not actually meaningful distinctions. They contend that in *Case* the evidence was that the guards failed to protect because the Plaintiff "had agreed to testify in a drug case against a guard at a prison of which he had formerly been an inmate." *Id.* However, here too, the threat was made because Redd believed that Plaintiff was a "snitch" regarding Redd trying to sell Plaintiff some drugs. Dkt. 71-8. That is the same circumstance. Further, in *Case,* the defendants argue that *Case* was different because that Plaintiff was supposed to be watched by guards. Appellees' brief at 29. But, here too, the chow hall was supposed to be watched by guards. Dkt. 71, at paras. 41-43. As a result, *Case* as well as all the other authority cited by Plaintiff in his opening brief serve as ample and sufficient prior notice that the Defendants' actions were unlawful and deliberately indifferent.

## II.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully submits that the summary judgment ruling should be reversed and that this case be remanded for further proceedings.

Respectfully submitted,
/s/ Edward M. Fox

Edward M. Fox
Attorney for Plaintiff — Appellant
Attorney for Marco Arroy
Ed Fox & Associates, Ltd.
118 N Clinton Street, Suite 425
Chicago, IL, 60661
Phone: (312) 345 – 8877
efox@efoxlaw.com

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 32(a)

The undersigned, an attorney, certifies that Appellant's Reply Brief complies with the

type-volume limitations of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and 32(a)(7).

The brief was prepared using Microsoft Word, 2010 version, and was written in 12-point font

and contains 3,046 words.

*s/ Edward M. Fox*
EDWARD M. FOX
Attorney for Plaintiff-Appellant
Ed Fox & Associates
118 N. Clinton St., Suite 425
Chicago, IL 60661
(312) 345-8877
efox@efox-law.com

CERTIFCATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Edward M. Fox*
EDWARD M. FOX
Attorney for Plaintiff-Appellant
Ed Fox & Associates
118 N. Clinton St., Suite 425
Chicago, IL 60661
(312) 345-8877
efox@efox-law.com